A96A0689. ADEFENWA v. THE STATE.
(471 SE2d 900)

McMURRAY, Presiding Judge.

Defendant was charged in an indictment with "TRAFFICKING HEROIN" for knowingly possessing "more than 28 grams of a mixture containing heroin." The evidence adduced at his jury trial revealed that, acting on information that a certain male in a certain white Subaru would be in a Checkers parking lot in Jonesboro, Clayton County, Georgia, "with a large quantity of drugs," Special Agent Joseph Daly of the Clayton County Police Department, assisted by Clayton County Deputy Sheriff James F. Watkins, drove a marked patrol unit to that parking lot and observed a white vehicle matching the description "backed into a parking space close to the drive-thru area." Special Agent Daly and Deputy Watkins, each in full uniform, began to approach the white vehicle. Defendant "immediately exited the vehicle in a very hurried manner. He began juggling his hamburger and his french fries and his Coke as he attempted to get out[,] almost dropping it." "[I]t appeared that [defendant] was trying

to separate [himself] from the vehicle." Defendant told the officers "that he was just waiting for a friend." Defendant's demeanor "was extremely nervous, he was fidgeting." Although defendant consented to a search of his person for weapons or drugs, when Special Agent Daly asked for permission to search the vehicle, defendant "didn't give . . . a response at all, he wouldn't tell [Special Agent Daly] whether [the agent] could or couldn't search his vehicle." Special Agent Daly asked again. Defendant's "second response was, he said, what would you do if I tell you, no." "At that point it was obvious [defendant] wasn't going to give [Special Agent Daly] an answer either way. [Special Agent Daly] asked [defendant] again to clarify whether or not he was [going to] allow [the agent] to search his vehicle, again, no response."

In Special Agent Daly's patrol unit was Wodan, a Belgian Malinois trained to detect narcotics by scent. When defendant refused to clarify whether he would or would not permit officers to search his vehicle, Special Agent Daly "just went to [his] vehicle and removed the canine." Wodan alerted to the presence of drugs in the front seat of defendant's automobile. When Wodan reached the front passenger door seam, he "crouched down. That indicates . . . he smelled the odor of narcotics. . . . When he reached that door seam he immediately stopped and began to give an aggressive scratch on the door seam." Special Agent Daly put Wodan back in his patrol unit and then "explained to [defendant] that the dog had indicated there was a presence of narcotics in his vehicle. [Special Agent Daly] asked [defendant] again would he or did he have anything to tell [him] about what was in the vehicle. At that time, [defendant] just said, no, you can't search the vehicle." Special Agent Daly informed defendant that, "based on everything that we'd observed, our conversation, his unusual behavior and suspicious manner and on the dog's aggressive indication of the presence of narcotics, that I was going to search the vehicle without his consent." Deputy Watkins "observed a Checkers bag . . . sitting in the floorboard area on the passenger side. . . ." This bag contained "a brown powdery substance [in eight plastic bags] suspected of being heroin." Defendant was placed under custodial arrest and read his *Miranda* rights. Defendant "stated that he understood them and then [Special Agent Daly] took a brief statement." Defendant identified the substance as drugs and "said he got them from a friend or acquaintance from his work and that they really didn't belong to him, he was just selling them for that person to make extra money." Forensic analysis showed that the brown powder, net weight 220 grams, tested positive for heroin. The strength was "45 percent pure." There was a "cut or a substance which was added to the heroin to increase its volume and that substance was found to be phenalthalene."

The jury found defendant guilty as charged. His motion for new trial was denied, and this appeal followed. *Held*:

1. Defendant first enumerates the overruling of his motion to suppress. That motion urged "Defendant's automobile was searched illegally while defendant was being held in illegal custody, said search was being conducted without a warrant or probable cause." After a hearing, the trial court determined from the bench that the officers had a right to approach defendant "with or without articulable suspicion." The trial court concluded that "defendant was not detained or arrested . . . until after the contraband was [discovered and] removed from the vehicle. . . ." The trial court further concluded that, subsequent to the alert by the drug dog, "the police officers had probable cause to search the vehicle without a warrant given the exigent circumstances and the nature of it being a vehicle, et cetera." On appeal, defendant argues that the officers did not have probable cause to arrest. We disagree.

When Wodan, the trained Belgian Malinois, alerted to the presence of narcotics in defendant's car, "the officer[s] then had probable cause to believe that contraband was contained somewhere therein. 'A sniffing dog may provide probable cause for the issuance of a search warrant, (cits.) or when exigent circumstances are present, justify a search without a warrant. (Cits.)' *State v. Morrow*, 625 P2d 898, 901 (1) (Ariz. 1981). Once [Special Agent Daly] had probable cause to believe that contraband was contained somewhere in [defendant's] automobile, he was authorized to conduct a [warrantless] search of its contents. . . . [Cit.] [In the case sub judice, the] trial court did not err in denying [defendant's] motion to suppress." *Boggs v. State*, 194 Ga. App. 264 (390 SE2d 423). See also *Roundtree v. State*, 213 Ga. App. 793 (446 SE2d 204); *Donner v. State*, 191 Ga. App. 58, 60 (380 SE2d 732).

2. The trial court did not abuse its discretion in refusing to grant a continuance of the suppression hearing in order to await the arrival of two defense witnesses, purportedly under subpoena, where defendant failed to make the required showing of availability and materiality under OCGA § 17-8-25. " 'Each of the requirements set forth in OCGA § 17-8-25 must be met before an appellate court may review the exercise of the trial court's discretion in denying a motion for continuance based upon the absence of a witness.' . . . *Garrett v. State*, 202 Ga. App. 463 (414 SE2d 693)." *Grant v. State*, 212 Ga. App. 565 (1) (442 SE2d 898).

3. Defendant's final two enumerations contend the trial court erred in overruling his motion for new trial on the special ground of ineffective assistance of counsel. He complains that trial counsel was ineffective "by not being prepared for the Motion for Funds to Hire an Expert Witness who was necessary in order to properly attack the

use of the canine [and further by] not objecting to the jury array, which had a clear underrepresentation of [members of defendant's race]."

"When inadequate representation is alleged, the critical factual inquiry ordinarily relates to whether the defendant had a defense that was not presented; whether trial counsel consulted sufficiently with the accused, and adequately investigated the facts and the law; and whether the omissions charged to trial counsel resulted from inadequate preparation rather than from unwise choices of trial tactics and strategy. Generally, the burden is on the defendant claiming ineffective [assistance] of counsel to establish (1) his attorney's representation in specified instances fell below an objective standard of reasonableness *and* (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. The trial court's determination that an accused has not been denied effective assistance of counsel will be affirmed on appeal unless that determination is clearly erroneous." (Citations and punctuation omitted; emphasis in original.) *Johnson v. State*, 214 Ga. App. 77 (1) (447 SE2d 74).

(a) With respect to trial counsel's alleged failure, over a five-month period, to prepare for defendant's motion for funds to hire an expert witness to challenge the reliability of the canine alert, we assume — but do not hold — that such a failure to prepare and to use wisely such time and resources as were already available fell below that objectively reasonable standard of diligent preparation that members of the bar in good standing are presumed to render. The question becomes whether defendant has met his burden of persuasion to show that, but for this omission, there is a reasonable probability that the result of the proceeding would have been different. We conclude he has not.

"A conviction will not be reversed on the basis of ineffective assistance of counsel unless ' "counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." ' *Carter v. State*, 176 Ga. App. 632, 633 (337 SE2d 413) (1985), quoting from *Strickland v. Washington*, 466 U. S. 668, 669 (104 SC 2052, 80 LE2d 674) (1984). See *United States v. Cronic*, 466 U. S. 648 (104 SC 2039, 80 LE2d 657) (1984)." *Cofield v. State*, 216 Ga. App. 623, 627 (5) (455 SE2d 342). In the case sub judice, a successful challenge to defendant's conviction would require a two-step showing: (1) that the trial court would have granted a properly prepared motion for funds to hire an expert witness, *and* (2) that this expert would have revealed some glaring flaw in Special Agent Daly's interpretation of Wodan's aggressive alert to the door of defendant's car, such that the motion to suppress would have been granted as well. As it was, at the sup-

pression hearing, trial counsel challenged the assumption that Wodan's alert meant the dog smelled narcotics by posing the plausible alternative that he responded to the odor of food, such as hot hamburgers from Checkers, in defendant's vehicle. It is noteworthy that defendant and appellate counsel have not shown just how material such an expert's aid would have been or raised a reasonable probability that the expert's evidence would have changed the result. Given the overwhelming evidence of defendant's guilt of trafficking in cocaine, "there is not a reasonable probability that, but for his counsel's [alleged] errors, the jury would have had a reasonable doubt regarding his guilt." *Black v. State*, 264 Ga. 550 (1), 552 (448 SE2d 357). Defendant has failed to show that the trial cannot be relied upon to have produced a just result. Consequently, the trial court was authorized to conclude that trial counsel's failure to challenge the reliability of the trained canine's alert by means of an expert witness did not prejudice defendant.

(b) The array from which defendant's petit jury was selected contained only two members of defendant's race, one of whom was "struck for cause by [the] court because he had a previous conviction for habitual violator." After the trial court had the State's attorney explain her peremptory strike to remove that other venireman of defendant's race, trial counsel withdrew his challenge under *Batson v. Kentucky*, 476 U. S. 79 (106 SC 1712, 90 LE2d 69). In response to a direct inquiry by the trial court, trial counsel had no objection "to the makeup of the jury list in this case." Defendant contends that trial counsel was ineffective for not challenging the array. Judging from the venire in this case alone, defendant argues that "[o]bviously the method used to select the array in question was inadequate to obtain a relative cross-section of the community from which it was drawn."

In determining what constitutes ineffective assistance of counsel, a critical distinction is made between inadequate preparation on the one hand, and unwise choices of trial tactics and strategy on the other hand. *Hudson v. State*, 250 Ga. 479, 485 (8), 486 (299 SE2d 531). "There is a strong presumption that trial counsel's performance 'falls within the wide range of reasonable professional assistance' and that any challenged action ' "might be considered sound trial strategy." ' [*Strickland v. Washington*, 466 U. S. 668, supra] at 689 (quoting *Michel v. Louisiana*, 350 U. S. 91, 101 (76 SC 158, 100 LE 83) (1955))." *Earnest v. State*, 262 Ga. 494, 496 (5) (422 SE2d 188).

We find no unprofessional lapse in the case sub judice from trial counsel's deliberate choice not to pursue a challenge to his array. "[T]here is no constitutional guarantee that grand or petit juries, impaneled in a particular case, will constitute a representative cross section of the entire community. . . . See *Campbell v. State*, 240 Ga. 352, 356 (5) (240 SE2d 828)." *Smith v. State*, 151 Ga. App. 697, 699

(4) (261 SE2d 439). The mere fact that a jury panel contains no members of a defendant's race will not, standing alone, support a challenge to the array and warrant the granting of a motion for new trial. *Hudson v. State*, 185 Ga. App. 508 (1) (364 SE2d 635). Rather, the proper "inquiry concerns the procedures for *compiling* the jury lists and not the actual composition of the grand or traverse jury in a particular case. [Cits.]" (Emphasis supplied.) *Patterson v. Balkcom*, 245 Ga. 563, 564 (1), 565 (266 SE2d 179). There is no competent evidence of *systematic* exclusion or underrepresentation of prospective jurors of defendant's race. See *Campbell v. State*, 240 Ga. 352, 355 (2), supra; *Truitt v. State*, 212 Ga. App. 286 (441 SE2d 800). Consequently, trial counsel's "tactical decision not to challenge the traverse jury array resulted in [no] denial of [defendant's] Sixth and Fourteenth Amendment right to effective assistance of counsel. *Hudson v. State*, 250 Ga. 479 (8)[, supra]. We find no merit in this enumeration." *Godfrey v. Francis*, 251 Ga. 652, 653 (1), 654 (308 SE2d 806).

*Judgment affirmed. Johnson, J., concurs. Ruffin, J., concurs in the judgment only.*

DECIDED MAY 14, 1996.

*Patricia A. Buttaro*, for appellant.
*Robert E. Keller, District Attorney, Deborah N. Maron, Assistant District Attorney*, for appellee.