A98A1283. CHEEKS v. THE STATE.
(507 SE2d 204)

BEASLEY, Judge.

Following the denial of his motion for new trial, Cheeks appeals his conviction of trafficking in cocaine. OCGA § 16-13-31 (a).

1. He enumerates as error the court's charge to the jury that it was authorized to convict him of trafficking based on a finding of either actual or constructive possession, in that the indictment only charged him with actual possession.

As originally enacted, the cocaine trafficking statute (now OCGA § 16-13-31 (a) (1)) required the State to prove that the defendant was in actual possession of cocaine in order to secure a conviction for trafficking.[1] A statutory amendment was enacted in 1988 deleting the actual possession requirement.[2] Under the current version of the statute, a defendant may be convicted of trafficking in cocaine based on a finding of either actual or constructive possession.[3]

" '[I]t is error to charge the jury that a crime may be committed by alternative methods [under the statute], when the indictment charges it was committed by one specific method. If there is a reasonable possibility that the jury convicted the defendant of the commission of a crime in a manner not charged in the indictment, then the conviction is defective because of a fatal variance between the proof at trial and the indictment returned by the grand jury.' [Cit.]"[4]

The evidence showed that in 1994 a Hall County drug unit received a tip that on a specified date Cheeks would be transporting crack cocaine from Atlanta to Hall County. Officers were given a

---

[1] See Ga. L. 1980, p. 432, § 1; *Lockwood v. State*, 257 Ga. 796 (364 SE2d 574) (1988).

[2] *McCrief v. State*, 260 Ga. 87 (390 SE2d 32) (1990), aff'g 193 Ga. App. 667, 669 (3) (388 SE2d 859) (1989).

[3] See *Sanchez v. State*, 197 Ga. App. 470, 473 (3) (398 SE2d 740) (1990) (physical precedent only).

[4] *Blige v. State*, 208 Ga. App. 851, 852 (2) (432 SE2d 574) (1993) (harmful error), aff'd on other grounds 264 Ga. 166 (441 SE2d 752) (1994); see *Levin v. State*, 222 Ga. App. 123, 126 (6) (473 SE2d 582) (1996) (harmful error); compare *Hill v. State*, 228 Ga. App. 362, 364 (2) (492 SE2d 5) (1997) (harmless error).

description of the car he would be driving, the time of his arrival in the county, the residential address to which he was going, and the route by which he would get there. The car belonged to Cheeks' girlfriend, who told police that Cheeks was driving it with her permission. After a surveillance team observed a car fitting the basic description being driven along the stated route at the time in question, they proceeded to the address given and observed the vehicle parked in an adjacent driveway. Agents encountered Cheeks walking from the car to the residence. In his hand was a set of three keys; the key which unlocked the door to the car was pressed between his thumb and forefinger. In the car's glove compartment, one of the agents found 69 grams of cocaine. This agent testified that the warmth of the car indicated it had been driven recently. In a statement given by Cheeks to another agent, he admitted that he and other named individuals had used the car to obtain and transport the crack cocaine and that he intended to turn the cocaine over to one or two other individuals who were expected at the scene several minutes after he was apprehended by police.

This evidence indisputably showed that immediately before his arrest Cheeks knowingly had direct physical control over the cocaine (actual possession) and not merely the power and intention to exercise dominion or control (constructive possession).[5] Under these circumstances, the court's charge to the jury on constructive possession did not constitute harmful error. "[T]he evidence was that appellant was in 'actual' possession . . . of the cocaine while he drove the car. . . . So, [he] could not have been harmed by [the instruction] that he could be convicted upon mere constructive possession."[6]

Analogous is *Dukes v. State*,[7] where the jury charge recited the entire statutory definition of a crime but the indictment did not. As to one of the defendant's convictions, the Supreme Court held that the absence of a remedial instruction did not create a reasonable possibility that the jury convicted the defendant of the commission of a crime in a manner not charged in the indictment, because there was no evidence establishing that the defendant committed the crime in such manner.

*Boatwright v. State*,[8] relied on by Cheeks, is distinguishable. The evidence there showed actual possession of the cocaine, not by the defendant, but rather by his alleged co-conspirator. *Boatwright* is part of a line of decisions of this Court holding that a charge that the jury was authorized to convict the defendant of trafficking in cocaine

---

[5] See generally *Lockwood v. State*, supra.

[6] *Romano v. State*, 193 Ga. App. 682, 683 (2) (388 SE2d 757) (1989).

[7] 265 Ga. 422 (457 SE2d 556) (1995).

[8] 193 Ga. App. 141, 143 (5) (387 SE2d 386) (1989).

based on a finding of constructive possession was "substantially in error and harmful as a matter of law,"[9] when the cocaine trafficking statute required the State to prove actual possession.[10] These cases were decided under the authority of *Lockwood v. State*, supra. In view of the 1988 amendment to the cocaine trafficking statute, *Lockwood* is no longer controlling.[11]

2. Cheeks next contends he was deprived of his right to a fair and impartial jury because jurors four and ten were excused on the basis that they were related to him within the prohibited degree of consanguinity when in fact they were not.

During voir dire, jurors four, ten, and forty-six responded affirmatively when the members of the panel were asked whether anyone was related to Cheeks. Juror four informed the court that she had always been told that her mother and Cheeks' mother were second cousins. This would make Cheeks and the juror third cousins.[12] According to juror ten, his mother and Cheeks' mother were sisters, making him and Cheeks first cousins. Juror forty-six revealed that Cheeks was married to his sister, so Cheeks was his brother-in-law.

The judge stated that it appeared to him that jurors ten and forty-six should be stricken for cause and that he was inclined to excuse juror four as well, but that he would entertain arguments from counsel if they felt any of these jurors were not legally disqualified. Both the prosecuting attorney and defense counsel agreed that all three jurors were disqualified for cause. After defense counsel noted that his only concern was that this would result in removal of one-third of the African-Americans from a panel that was only 20 percent African-American, the jurors were excused without objection. The trial court's removal of jurors four and ten was effectively waived.[13]

3. Cheeks' final complaint is that defense counsel was constitutionally ineffective because he failed to object to the trial court's excusal of these jurors.

"OCGA § 15-12-163 requires that a juror 'shall be set aside for cause' if 'he is so near of kin to the prosecutor, the accused, or the victim as to disqualify him by law from serving on the jury.' . . . 'All trial

---

[9] See OCGA § 5-5-24 (c).

[10] See *Riley v. State*, 191 Ga. App. 781, 782 (2) (383 SE2d 172) (1989) (the case relied on in *Boatwright*) and cits.

[11] See *McCrief v. State*, supra.

[12] See Webster's Third New International Dictionary, p. 523, defining "cousin" as follows: "a relative descended from one's grandparent or from a more remote ancestor by two or more steps and in a different line . . . <the children of first cousins are second cousins to each other, the children of second cousins are third cousins, etc.> <the child of one's first cousin is one's first cousin once removed, the latter's child is one's first cousin twice removed, etc., though those are often called also second and third cousins respectively>"

[13] *Blankenship v. State*, 258 Ga. 43 (2) (365 SE2d 265) (1988).

jurors in the courts of this state shall be disqualified to act or serve in any case or matter when such jurors are related by consanguinity or affinity to any party interested in the result of the case or matter within the sixth degree as computed according to the civil law. . . .' OCGA § 15-12-135 (a). 'The civil law is computed by counting from one of the persons up to the common ancestor, and then down again to the other person.' [Cit.]"[14] "At the common law and the canon law the degrees between collaterals are found by taking the number from the common ancestor to either, or the more remote, of them."[15] Under the civil law, " '[t]he correct method of computation is to count the "steps" or generations from one ancestor to the next counting each "step" or generation as one degree, and not to count each ancestor as a degree. If the sum is within the sixth degree, the juror is disqualified to serve in the matter. . . .' [Cit.]"[16] Consequently, under the civil law formula, first cousins are related within the fourth degree of consanguinity,[17] second cousins come within the sixth degree,[18] and third cousins are eighth-degree relations.[19]

---

[14] *Howard v. State*, 191 Ga. App. 418, 419 (2) (382 SE2d 159) (1989).

[15] Webster's, supra at p. 482, defining "consanguinity."

[16] *Howard v. State*, supra.

[17] 23 AmJur2d 792-793, Descent and Distribution, § 55 (1983).

[18] Id.

[19] The following diagram shows how third cousins are related in the eighth degree:

Common Ancestors

| Grandparents of 1st cousins |
| :---: |
| [great-grandparents of 3rd cousins] |

| Step 4 | Step 5 |
| :---: | :---: |
| Parents of 1st cousins<br>[great-grandparents of 3rd cousins] | Parents of 1st cousins<br>[great-grandparents of 3rd cousins] |
| **Step 3** | **Step 6** |
| 1st cousins<br>[grandparents of 3rd cousins] | 1st cousins<br>[grandparents of 3rd cousins] |
| **Step 2** | **Step 7** |
| 2nd cousins<br>[parents of 3rd cousins] | 2nd cousins<br>[parents of 3rd cousins] |
| **Step 1** | **Step 8** |
| 3rd cousins | 3rd cousins |

Application of the civil law formula has proved troublesome through the years. In *Smith v. State*, 2 Ga. App. 574 (59 SE 311) (1907), the court correctly determined that second cousins once removed are related in the seventh degree. *Smith v. State*, 62 Ga. App. 494 (8 SE2d 663) (1940), and *Williams v. State*, 206 Ga. 107, 108 (2) (55 SE2d 589) (1949), correctly concluded that where the common ancestors of the respective parties were their great-grandparents, the parties were related within the sixth degree, but incorrectly stated that this resulted in their being third cousins rather than second cousins. *Eaton v. Grindle*, 236 Ga. 324, 325 (223 SE2d 670) (1976), relied on *Smith v. State*, supra, 62 Ga. App. 494, in holding that the common ancestor of third cousins was their great-grandfather, thereby resulting in

Therefore, counsel could have successfully objected to the removal of juror four, as third cousins are not within the legally prohibited degree of relationship. Based on the facts stated by juror ten at trial, an objection to his removal would not have succeeded, as first cousins are legally disqualified.[20] At the hearing on Cheeks' motion for new trial, he presented evidence contradicting the basis for juror ten's representation that he and Cheeks were first cousins, i.e., that his mother and Cheeks' mother were sisters. Cheeks' mother testified that she is an only child. Cheeks testified he told defense counsel during voir dire that he did not know juror ten. In his testimony, counsel stated that Cheeks may have told him this, but he was probably more concerned with other matters.

When substandard professional representation is alleged, a critical factual inquiry relates to whether " 'the omissions charged to trial counsel resulted from inadequate preparation rather than from unwise choices of trial tactics and strategy. Generally, the burden is on the defendant claiming ineffective (assistance) of counsel to establish (1) his attorney's representation in specified instances fell below an objective standard of reasonableness *and* (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. . . .' [Cit.]"[21]

" 'A trial court's finding that a defendant has been afforded effective assistance of counsel must be upheld unless that finding is clearly erroneous. A conviction will not be reversed on the basis of ineffective assistance of counsel unless counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result.' [Cit.]"[22]

Although counsel's failure to object to the removal of at least one of the jurors can be deemed a legal error, Cheeks did not make the second showing required in order to establish a claim of ineffective assistance.

Under Georgia law it is well established that " '[a] party to a lawsuit has no vested interest in having any particular juror to serve; he is entitled only to a legal and impartial jury. The erroneous allowing of a challenge for cause affords no ground of complaint if a competent and unbiased jury is finally selected.' "[23] Therefore, the removal of a

---

their being related in the sixth degree. In *Howard v. State*, supra, we cited *Eaton* as authority for the conclusion that third cousins are related in the sixth degree.

[20] See id.

[21] (Emphasis in original; physical precedent only.) *Adefenwa v. State*, 221 Ga. App. 429 (471 SE2d 900) (1996); see *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984).

[22] *Bell v. State*, 226 Ga. App. 271, 274 (7) (486 SE2d 422) (1997).

[23] *Wells v. State*, 261 Ga. 282, 283 (2) (404 SE2d 106) (1991); *Jones v. State*, 139 Ga. App. 824 (2) (229 SE2d 789) (1976); compare *Eaton v. Grindle*, supra.

juror or jurors based on erroneous determinations of legal disqualification did not lead to a trial the result of which is suspect. Nor can we conclude that the result of the trial would have been different had the two stricken jurors been allowed to serve.

*Batson v. Kentucky*[24] and its progeny hold that a criminal defendant has a constitutional right to be tried by a jury whose members are selected pursuant to nondiscriminatory criteria and an individual juror has the right not to be excluded from a jury on account of race.[25] No violation of these rights appears because the jurors in this case were struck for racially neutral reasons.[26]

The trial court's determination that Cheeks was not denied effective assistance of counsel is not clearly erroneous.

*Judgment affirmed. Pope, P. J., and Ruffin, J., concur.*

DECIDED SEPTEMBER 18, 1998.

*Summer & Summer, Chandelle T. Summer,* for appellant.
*Lydia J. Sartain, District Attorney, Shampa Banerji, Assistant District Attorney,* for appellee.

---

[24] 476 U. S. 79 (106 SC 1712, 90 LE2d 69) (1986).
[25] *Lewis v. State,* 262 Ga. 679, 680 (2) (424 SE2d 626) (1993).
[26] See *Marshall v. State,* 266 Ga. 304 (2) (466 SE2d 567) (1996).