A05A0487. DUNBAR v. THE STATE.
A05A0488. McGEE v. THE STATE.
A05A0489. ROBERTS et al. v. THE STATE.
(614 SE2d 472)

MILLER, Judge.

A Screven County jury found Jerry Dunbar, Ronnie McGee, Timothy Roberts, and Willie James Roberts (the defendants) guilty of two counts of armed robbery, two counts of aggravated assault, one count of burglary, and two counts of possession of a firearm during the commission of certain crimes. On appeal, the defendants claim they are entitled to a new trial because (1) a juror was disqualified by her relationship to a victim of the crime, (2) the trial court erroneously charged the jury as to the alternate methods of committing aggravated assault, and (3) the trial court erred in failing to merge their convictions for armed robbery and possession of a firearm during the commission of certain crimes. McGee, Timothy Roberts, and Willie Roberts further claim the evidence was insufficient to support the verdict. We discern no error and affirm.

Viewed most favorably to the jury's verdict, the evidence shows that sometime between 9:00 and 10:00 p.m. on December 18, 1999, four men forcibly entered the residence of Gerald Lewis Albright, Quentin Kirkland, Telisa Albright, and Paul Taylor, all of whom were home at the time. The invaders were armed with a pistol and a shotgun. Three of the men wore masks, and the victims described one

of the masks as a "Jason" mask because it was reminiscent of a mask worn by a character from a well-known horror film. The assailants were dressed in overalls. One man struck Taylor in the head with a gun and then kicked him. The assailant also pointed his gun at Telisa Albright. The men stole cash from Gerald Albright and Timberland boots and tennis shoes from Kirkland before leaving.

At 10:11 p.m. that same evening, a Georgia State Patrol officer stopped a silver car for a speeding violation. The officer noticed a white hockey mask in the back seat of the vehicle, and the mask reminded him of the "Jason" character from a horror movie. Willie Roberts was driving the car, and he told the officer that one of the passengers was his brother, Timothy Roberts. The officer later recognized Dunbar as also being in the car. The officer let the car go, but just as the car left the scene the officer overheard a report over his police radio about a recent armed robbery involving four men and masks. Through a conversation with a Screven County sheriff's deputy, the officer learned that the traffic stop of the silver car had occurred close to the location of the reported robbery. Georgia State Patrol officers began looking for the silver car.

Approximately 30 minutes later, officers located the vehicle at Dunbar's residence, and the officers detained Willie Roberts. A person was seen fleeing the scene. Willie Roberts told an officer he had been dropping off McGee, who lived next door to Dunbar. Later that evening, police searched McGee's home with the permission of McGee's mother. They noticed broken cobwebs around the attic door, prompting them to search the attic, where they found a shotgun. Albright testified that the shotgun looked like the one used by one of the assailants during the home invasion, and Kirkland testified that it was the shotgun used by the assailant. In McGee's room, police found overalls lying on the floor and a box of shotgun shells.

During the investigation, McGee gave a statement to police that he, Dunbar, Timothy Roberts and Willie James Roberts had been in the car the evening of the crime. Also during the investigation, Albright, Kirkland, and Taylor viewed the videotape of the traffic stop of the silver car and identified a man on the videotape as wearing the type of overalls that the home invaders had worn.

At trial, the four victims identified Dunbar as the home invader who had not been wearing a mask. The videotape of the traffic stop was shown to the jury. The jury was also shown a map on which a witness identified the relative location of the crime and the traffic stop. Based on the foregoing, we conclude that the evidence would allow any rational trier of fact to find the defendants guilty of the crimes of which they were convicted. See OCGA §§ 16-8-41 (a) (armed robbery); 16-5-21 (a) (2) (aggravated assault with a deadly weapon); 16-7-1 (a) (burglary); 16-11-106 (b) (2) (possession of firearm during

commission of crime involving unlawful entry); 16-2-20 (parties who aid in the commission of a crime may be charged and convicted of the crime); see also *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

1. The defendants claim they are entitled to a new trial because juror L. E. Taylor concealed her relationship with the victim Paul Taylor. We disagree.

(a) During voir dire, the trial court asked the prospective jurors if any of them were related by blood or marriage to victim Paul Taylor. Juror Taylor did not respond. In a later hearing on motion for new trial, juror Taylor testified that her husband at the time of the trial was the first or second cousin of victim Paul Taylor. However, juror Taylor also testified that at the time she was selected as a juror she had never met Paul Taylor and had no idea that she was in any way related to him.

"In order for a defendant to secure a new trial because a juror did not give a correct response to a question posed on voir dire . . . the defendant must show that the juror failed to answer the question truthfully and that a correct response would have been a valid basis for a challenge for cause." (Citations omitted.) *Sears v. State*, 270 Ga. 834, 840 (2) (514 SE2d 426) (1999). The trial court's findings of fact on motion for new trial will be upheld unless clearly erroneous. *White v. State*, 221 Ga. App. 860, 862 (2) (473 SE2d 539) (1996). Evidence supports the trial court's conclusion that juror Taylor was not untruthful about her relationship with the victim, since she was not even aware of her relationship with the victim at the time she answered the question. Therefore, the defendants are not entitled to a new trial because of juror misconduct. See *Royal v. State*, 266 Ga. 165, 166-167 (2) (465 SE2d 662) (1996) (juror was honest in failing to disclose he knew anyone who worked for the district attorney's office).

(b) The defendants further argue that the relationship of juror Taylor to Paul Taylor rendered the jury incompetent to deliver a verdict. OCGA § 15-12-135 (a) provides: "All trial jurors in the courts of this state shall be disqualified to act or serve in any case or matter when such jurors are related by consanguinity or affinity to any party interested in the result of the case or matter within the sixth degree as computed according to the civil law." Juror Taylor was related to Paul Taylor by affinity to the same degree her husband was related to Paul Taylor by consanguinity. See *Eaton v. Grindle*, 236 Ga. 324, 325 (223 SE2d 670) (1976). If, as juror Taylor testified, her husband at the time of the trial was related to a victim of the crime as a first cousin or second cousin, she was disqualified to serve as a juror. See *Cheeks v. State*, 234 Ga. App. 446, 449 (3) (507 SE2d 204) (1998) (first cousins are related in the fourth degree of consanguinity; second

cousins are related within the sixth degree). See also OCGA § 15-12-163 (b) (4) (juror may be challenged as so near of kin to the prosecutor, the accused, or the victim as to be disqualified by law from serving on jury).

Nevertheless, after the verdict, a litigant cannot obtain a new trial on the ground that a juror was disqualified by relationship, unless the litigant can show that before the verdict he and his counsel did not know of the relationship and could not have discovered the relationship by the exercise of ordinary diligence. See *Williams v. State*, 206 Ga. 107, 108-110 (2) (55 SE2d 589) (1949); *Reid v. State*, 204 Ga. App. 358, 361 (2) (419 SE2d 321) (1992). "[W]here it appears that the party having cause to complain either knew of the relationship, or could have discovered it by the timely exercise of ordinary diligence, and remained silent, that party will be presumed to have waived the disqualification." (Citation omitted.) *Brindle v. State*, 125 Ga. App. 298, 299 (1) (187 SE2d 310) (1972). The trial court's decision on a motion for new trial based on evidence of a disqualifying relationship is reviewed under the abuse of discretion standard. *Millers Nat. Ins. Co. v. Waters*, 97 Ga. App. 103, 109 (2) (102 SE2d 193) (1958).

In this case, the trial court determined that the defendants could have discovered the relationship between juror Taylor and victim Taylor by ordinary diligence because a review of the juror list and the witness list showed that the juror and the victim shared the same last name. Although the trial court asked the jurors if any of them were related to victim Taylor, this did not satisfy the defendants' obligation to show ordinary diligence in discovering juror Taylor's relationship to victim Taylor if they had reason to believe a disqualification existed. See *Norman v. Norman*, 103 Ga. App. 626, 629 (2) (120 SE2d 42) (1961) (defendant waived juror disqualification issue where counsel thought that juror was related to one of plaintiff's counsel because of juror's surname, but did not pursue the matter after trial court asked if members of the prospective jury were related to the counsel and none answered). It was the defendants' burden to show that neither they nor their counsel knew or had reason to suspect the disqualifying relationship, but they presented no evidence on the issue. See *Jennings v. Autry*, 94 Ga. App. 344 (5) (94 SE2d 629) (1956) (after verdict, it is essential for the movant and his counsel to establish that neither knew or had reason to suspect a juror relationship they contend to be disqualifying). Accordingly, the trial court did not abuse its discretion in finding the defendants waived the matter of juror Taylor's disqualification.

2. The defendants claim the trial court erroneously charged the jury on aggravated assault. They contend that there was a reasonable probability that the jury convicted them of aggravated assault in a manner not charged in the indictment. We disagree.

A defendant's right to due process may be endangered when an indictment charges the defendant with committing a crime in a specific manner and the trial court's jury instruction defines the crime as an act which may be committed in another manner. *Harwell v. State*, 270 Ga. 765, 766 (1) (512 SE2d 892) (1999). Here, the trial court's jury instruction defined aggravated assault as including an assault "with any object, device, or instrument which when used offensively against a person is likely to or actually does result in serious bodily injury." The indictment only referred to the commission of the crimes through the use of a deadly weapon. However, the defendants do not point to evidence showing that an aggravated assault could have occurred other than through the use of a deadly weapon. Compare *Griffin v. State*, 214 Ga. App. 813, 815-816 (2) (449 SE2d 341) (1994) (evidence showed defendant may have committed aggravated assault in manner other than charged in the indictment). Viewing the charge as a whole, we conclude that the jury instruction was not erroneous.

Moreover, the trial court instructed the jury that the State was required to prove beyond a reasonable doubt every material allegation of the indictment. Thus, even if the aggravated assault charge was erroneous, such error was rendered harmless in light of this additional instruction. See *Simmons v. State*, 251 Ga. App. 682, 689 (6) (555 SE2d 59) (2001).

3. The defendants contend that their convictions on Counts 1 through 5 should merge into one conviction for armed robbery because the offenses merged as a matter of fact. We disagree.

(a) "Offenses merge as a matter of fact pursuant to OCGA § 16-1-6 (1) if one of them is established by proof of the same or less than all the facts required to prove the other." (Citation and punctuation omitted.) *Parker v. State*, 249 Ga. App. 530 (549 SE2d 154) (2001). Counts 1 through 4 specify four different crimes and victims, namely the armed robbery of Gerald Albright, the armed robbery of Quentin Kirkland, the aggravated assault of Paul Taylor, and the aggravated assault of Telisa Albright. None of these offenses could be proved by the same or less than all the facts required to prove another. See *Phanamixay v. State*, 260 Ga. App. 177, 180-181 (3) (581 SE2d 286) (2003) (two armed robbery convictions did not merge because different victims were involved). As for Count 5, burglary, the offense occurred when the defendants entered the dwelling house of another with the intent to commit theft therein. The aggravated assaults and armed robbery occurred later and the facts required to prove those offenses were separate from the burglary. See *Bay v. State*, 266 Ga. App. 91, 92 (4) (596 SE2d 229) (2004). The trial court did not err by failing to merge the defendants' convictions on Counts 1 through 5 into one conviction for armed robbery.

(b) The defendants also claim that their convictions on two counts of possession of a firearm during the commission of certain crimes should merge. We disagree.

The two arms-possession charges were based on the defendants' possession of two *different* guns during the burglary. These were separate crimes involving multiple defendants — separate crimes for which each defendant bore individual responsibility as either a principal or an accessory. The trial court properly refused to merge the two arms-possession counts for sentencing purposes. See, e.g., *Hixon v. State*, 251 Ga. App. 27, 29-30 (2) (553 SE2d 333) (2001).

*Judgments affirmed. Blackburn, P. J., and Bernes, J., concur.*

DECIDED APRIL 19, 2005.

*Robert L. Persse*, for appellant (case no. A05A0487).
*Grady K. Reddick*, for appellant (case no. A05A0488).
*Jerry M. Daniel*, for appellants (case no. A05A0489).
*Richard A. Mallard, District Attorney, Michael T. Muldrew, Assistant District Attorney*, for appellee.