## A08A1525. MORAN v. THE STATE.
### (666 SE2d 726)

ELLINGTON, Judge.

A McIntosh County jury found Phillip Moran, Jr., guilty beyond a reasonable doubt of aggravated assault, OCGA § 16-5-21 (a) (2) (with an object that when used offensively against a person is likely to result in serious bodily injury); terroristic threats, OCGA § 16-11-37 (a); and battery, OCGA § 16-5-23.1. Following the denial of his motion for a new trial, Moran appeals, contending that the trial court abused its discretion in denying his motion for a new trial after he adduced evidence that a juror was disqualified from serving because she is related to the victim. Moran also challenges the sufficiency of the evidence that he committed aggravated assault and terroristic threats. Finding no error, we affirm.

1. Moran contends that the trial court misconstrued the law applicable to the disqualification of jurors, and, as a result, abused its discretion in denying his motion for a new trial. Specifically, Moran contends that the trial court erred in requiring that he show that he had been prejudiced by the familial relationship between Mary Lee Bryant, who served as a juror at the trial, and the victim.

(a) OCGA § 15-12-135 (a) provides, in pertinent part, "[a]ll trial jurors in the courts of this state shall be disqualified to act or serve in any case or matter when such jurors are related by consanguinity or affinity to any party interested in the result of the case or matter within the sixth degree as computed according to the civil law."[1] The victim in a criminal case is such an interested party. *Dunbar v. State*, 273 Ga. App. 29, 31-32 (1) (b) (614 SE2d 472) (2005) (a person who is related within the sixth degree to the victim of a criminal offense is legally disqualified from serving as a juror at the trial of the defendant); OCGA § 15-12-163 (b) (4) (the State or the accused may object to a juror on the basis "[t]hat the juror is so near of kin to . . . the victim as to disqualify the juror by law from serving on the jury"). The undisputed evidence established that juror Bryant and the victim are related by consanguinity within the sixth degree as

---

[1] *Eaton v. Grindle*, 236 Ga. 324, 325 (223 SE2d 670) (1976) (the civil law degree of kinship is ascertained by tracing from the juror back to the common ancestor and then forward to the interested party and counting each generation or "step" as a degree); *Williams v. State*, 206 Ga. 107, 108 (2) (55 SE2d 589) (1949) (accord).

computed according to the civil law.[2] *Dunbar v. State*, 273 Ga. App. at 31-32 (1) (b); *Cheeks v. State*, 234 Ga. App. 446, 449 (3) (507 SE2d 204) (1998). Consequently, she was disqualified from serving in the matter. *Dunbar v. State*, 273 Ga. App. at 31-32 (1) (b).

Nevertheless, after a verdict, a litigant cannot obtain a new trial on the ground that a juror was disqualified by relationship, unless the litigant affirmatively shows that before the verdict neither he nor his counsel knew of the relationship

> and could not have discovered the relationship by the exercise of ordinary diligence. Where it appears that the party having cause to complain either knew of the relationship, or could have discovered it by the timely exercise of ordinary diligence, and remained silent, that party will be presumed to have waived the disqualification.

(Citations and punctuation omitted.) *Dunbar v. State*, 273 Ga. App. at 32 (1).[3] The movant bears the burden of establishing his and his counsel's lack of knowledge, even where the juror's disqualifying relationship was known to the prosecutor. *Williams v. State*, 206 Ga. 107, 109-110 (2) (55 SE2d 589) (1949). As the appellate court, we will not interfere with the trial court's decision on a motion for a new trial based on a juror's disqualifying relationship when there is any evidence to support the trial court's factual findings. *Gribble v. State*, 248 Ga. 567, 570 (4) (284 SE2d 277) (1981). The trial court's decision on a motion for a new trial based on evidence of a disqualifying relationship is reviewed under the abuse of discretion standard. *Dunbar v. State*, 273 Ga. App. at 32 (1) (b).

In this case, Moran did not testify at the hearing on his motion for a new trial, nor did he offer an affidavit or any other evidence that he did not know of, and could not have discovered, juror Bryant's disqualifying relationship.[4] Although juror Bryant testified at the hearing on Moran's motion for a new trial that she only learned that

---

[2] At the hearing on Moran's motion for a new trial, Bryant testified that she is related to the victim, Shonda Jackson, through the following five steps: from Bryant to Ada Sadler Jenkins (Bryant's mother), to Martha Sadler Simmons (Bryant's grandmother and the common ancestor), to George Simmons (the common ancestor's son), to Loretta Simmons Jackson (the common ancestor's granddaughter), and finally to Shonda Jackson (the common ancestor's great-granddaughter and the victim). See *Dunbar v. State*, 273 Ga. App. at 32 (1) (b) (first or second cousins are related within the sixth degree).

[3] See also *Williams v. State*, 206 Ga. at 109 (2) (accord); *Patterson Bank v. Gunter*, 263 Ga. App. 424 (1) (588 SE2d 270) (2003) (accord); *Collins v. State*, 252 Ga. App. 645, 647 (2) (556 SE2d 850) (2001) (accord).

[4] We note that the State stipulated that neither of Moran's trial attorneys had any knowledge of the familial relationship between Bryant and Jackson at any time before the trial court entered judgment on the jury's verdict.

her uncle was the victim's grandfather after her service as a juror was complete, the juror's ignorance of the relationship is not probative of whether Moran knew of, or through the exercise of ordinary diligence could have discovered, the relationship. As a result, the trial court was authorized to find that Moran waived the disqualification of juror Bryant. *Dunbar v. State*, 273 Ga. App. at 32 (1) (b) (affirming denial of motion for a new trial where the defendants presented no evidence that neither they nor their counsel knew of a disqualifying relationship between a juror and the victim and where, because the juror and the victim shared the same last name, the defendants by ordinary diligence could have discovered the relationship between them); *Collins v. State*, 252 Ga. App. 645, 646-647 (2) (556 SE2d 850) (2001) (affirming conviction where, after a juror disclosed during trial that she had discovered she and the defendant were first cousins once removed, the defendant interposed no objection to her continuing to serve on the jury).

(b) Finally, we turn to Moran's argument that the trial court improperly required that he show that he had been prejudiced by the juror's disqualifying relationship.[5] In support of this argument, Moran points to the trial court's statement in the order denying his motion for a new trial that "Bryant testified . . . that any relationship she had with the victim . . . had no bearing on her verdict." Pretermitting whether the court's comment demonstrated that it found that Moran failed to demonstrate any prejudice, this argument presents no basis for reversal because evidence in the record supported the trial court's finding that Moran failed to carry his burden of establishing his lack of knowledge. *Williams v. State*, 206 Ga. at 109 (2). See Division 1 (a), supra.

2. Moran contends that there was no evidence that he attempted to hit the victim with a cinder block, as alleged in the indictment charging him with aggravated assault. In addition, Moran contends that there was no evidence that the cinder block was an object that when used offensively against a person is likely to result in serious bodily injury. Finally, Moran contends that there was no evidence

---

[5] *Kirkland v. State*, 274 Ga. 778, 780 (2) (560 SE2d 6) (2002) ("[B]ias is conclusively presumed or inferred as a matter of law regardless of actual partiality, where a juror is related to a party. In that circumstance, disqualification on the basis of implied bias is mandatory." As a result, absent waiver, "[i]t is axiomatic that a verdict rendered by an illegally constituted jury must be set aside.") (citations and punctuation omitted). But see *Allen v. State*, 290 Ga. App. 604, 607 (2) (659 SE2d 900) (2008) (trial court did not abuse its discretion in denying a defendant's motion for new trial based on juror's alleged disqualifying relationship with the defendant, where the testimony of the juror at the new trial hearing did not reveal that she had any bias for or against the defendant or establish that their pretrial telephone conversations affected her verdict in the case and, thus, the defendant failed to show that he was in some way injured or that there was an advantage to the State).

that he intended to terrorize the victim when he threatened to kill her.[6] As a result, Moran contends, the evidence was insufficient to sustain his convictions for aggravated assault and terroristic threats.

> On appeal from a criminal conviction, [the appellate court] view[s] the evidence in the light most favorable to the verdict and an appellant no longer enjoys the presumption of innocence. [The appellate court] determines whether the evidence is sufficient under the standard of *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979), and does not weigh the evidence or determine witness credibility. Any conflicts or inconsistencies in the evidence are for the jury to resolve. As long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case, [the appellate court] must uphold the jury's verdict.

(Citations omitted.) *Rankin v. State*, 278 Ga. 704, 705 (606 SE2d 269) (2004). The standard of *Jackson v. Virginia* is met if the evidence is sufficient for any rational trier of fact to find the defendant guilty beyond a reasonable doubt of the crime charged. *Clark v. State*, 275 Ga. 220, 221 (1) (564 SE2d 191) (2002).

Viewed in the light most favorable to the verdict, the record shows the following. On the evening of June 18, 2006, Moran and Jackson, who had a history of violent fights, had an argument at their home. With the assistance of Moran's sister, Jackson tried to leave the residence to allow Moran to "cool off." Moran pulled Jackson out of his sister's car, pushed her to the ground, and yelled that he was going to kill her. After a struggle, Moran grabbed a full-sized concrete building block, raised it above his head while straddling Jackson, and tried to hit her in the head with the block. Jackson got away from Moran, and he put the block down. He forced her back into the residence, and they spent the night there, sleeping in separate rooms. Jackson reported the assault to the police the next day after Moran left and she was able to get to a telephone. The responding officer found her to be "extremely fearful," "crying," and "shaking" while giving her report. In her written statement, Jackson said that Moran had said "stupid stuff" to her; her written statement omitted any reference to Moran's attempt to hit her with

---

[6] "A person commits the offense of a terroristic threat when he or she threatens to commit any crime of violence . . . with the purpose of terrorizing another. . . . No person shall be convicted under this subsection on the uncorroborated testimony of the party to whom the threat is communicated." OCGA § 16-11-37 (a).

the cinder block. Moran and Jackson continued to be romantically involved intermittently until he was arrested two months after the assault.

(a) Contrary to Moran's argument, there was evidence from which the jury could find that he attempted to hit the victim with a cinder block and that the cinder block was an object that when used offensively against a person is likely to result in serious bodily injury. Accordingly, his sufficiency challenge to his aggravated assault conviction fails. *Oliver v. State*, 278 Ga. App. 425, 426-427 (1) (629 SE2d 63) (2006) (evidence authorized the jury to find that fists and a concrete block were objects that when used offensively against a person are likely to or actually did result in serious bodily injury).

(b) Moran's argument that the State failed to prove that, when he threatened to kill Jackson, he intended to terrorize her, as required by OCGA § 16-11-37 (a), also lacks merit. "The intention with which an act is done is peculiarly for the finder of fact. It is often difficult to prove with direct evidence an individual's intent as it existed at the time of the act for which [he] is being prosecuted. Thus, intent is often proved through the use of circumstantial evidence." (Punctuation and footnotes omitted.) *Williams v. State*, 271 Ga. App. 755, 756 (610 SE2d 704) (2005). In this case, regardless of any unfulfilled threats Moran may have uttered in the past, the evidence authorized the jury to find that on the night of June 18, 2006, when Moran threatened to kill Jackson as he pinned her down and raised a cinder block over her head, his purpose was to terrorize her. *Nelson v. State*, 277 Ga. App. 92, 97-98 (1) (c) (625 SE2d 465) (2005) (evidence authorized terroristic threats conviction where the defendant threatened to hurt and kill the victim, the victim feared for her safety as a result, and the defendant bruised the victim's face); *Williams v. State*, 271 Ga. App. at 756 (evidence authorized terroristic threats conviction where the defendant told a seven-year-old child that she was going to kill the child's mother); *Taylor v. State*, 226 Ga. App. 254, 254-255 (485 SE2d 830) (1997) (evidence authorized terroristic threats conviction where the defendant returned to the residence he had previously shared with the victim to reclaim some possessions, furiously dragged the victim from the yard into a bedroom, pointed a handgun at her, and repeatedly said he was going to kill her).[7]

*Judgment affirmed. Blackburn, P. J., and Miller, J., concur.*

---

[7] In his appellate brief, Moran argues that the history of his relationship with Jackson was so violent and so dysfunctional that each was undoubtedly numb to the threats from the other. The actions of Ms. Jackson certainly show that she was not

DECIDED JULY 23, 2008 —
RECONSIDERATION DENIED AUGUST 13, 2008 — ■■■■■■

*Craig T. Pearson*, for appellant.

*Tom Durden, District Attorney, Cris E. Schneider, Assistant District Attorney*, for appellee.

threatened by Mr. Moran's words that evening. It defies credulity to now believe that Mr. Moran, after living with and frequently fighting violently with Ms. Jackson, actually uttered his intent to kill her for the purpose of "terrorizing" her. Booga Booga Booga.

This Court is hard pressed to understand how counsel believes that this flippant use of obscure slang serves his client's best interests or comports with professional decorum.