A96A1090. HYMAN v. THE STATE.
(474 SE2d 243)

BLACKBURN, Judge.

Claude Demetrius Hyman appeals his convictions of armed robbery, attempted armed robbery, two counts of aggravated assault of a peace officer, and two counts of interference with government property.

1. In his first enumeration of error, Hyman asserts that the trial court erred in failing to grant his motion for directed verdict on the

armed robbery and attempted armed robbery charges. Hyman contends that he had abandoned any effort to commit the crimes charged.[1]

The evidence viewed in the light most favorable to the verdict shows that Hyman was arrested after he ran his vehicle into an embankment while being pursued by two police cars. After his arrest, Hyman made a statement to Kay Fulford, a special agent with the Georgia Bureau of Investigation. In his statement, Hyman admitted that he was driving his girl friend's 1986 red Pontiac Sunbird and that his two passengers were Mark Edwards and Carlos Laster.[2] Hyman stated that he had taken Laster to Laster's house so that Laster could get his "thing." After Laster obtained his "thing," Hyman realized that the "thing" was a sawed-off shotgun with pistol grips. Laster said that they needed to make a "hit," and that he would split any money with Hyman and Edwards.

Laster instructed Hyman to drive by a detail shop where several people were working. Laster told Hyman and Edwards to walk by the detail shop to determine how many people were present. Laster was then going to approach with the gun, and Hyman and Edwards were supposed to take the victims' money and jewelry. Laster failed to approach with the gun when Hyman and Edwards were at the detail shop, so Hyman agreed with Edwards' suggestion that they "pull out." As Hyman and Edwards got back to the car, Hyman heard Laster's gun cock and Laster yell "Get down, get down." Hyman and Edwards started back to the detail shop where Hyman saw a couple of people on the ground and another man running away. Upon seeing a car coming toward them that looked like a police car, Hyman and Edwards returned to their car. Laster got back to the car and said, "That's trouble, go, go, go." Hyman then drove the car while Laster fired his gun two different times at the two police cars chasing them. After Hyman turned off the highway and onto a dirt road, the car ran into an embankment.

Hyman argues that because he agreed to "pull out," and did not participate in the actual robbery, his motion for directed verdict should have been granted. While we recognize that mere presence at

---

[1] OCGA § 16-4-5 provides: "(a) When a person's conduct would otherwise constitute an attempt to commit a crime under Code Section 16-4-1, it is an affirmative defense that he abandoned his effort to commit the crime or in any other manner prevented its commission under circumstances manifesting a voluntary and complete renunciation of his criminal purpose. (b) A renunciation of criminal purpose is not voluntary and complete if it results from: (1) A belief that circumstances exist which increase the probability of detection or apprehension of the person or which render more difficult the accomplishment of the criminal purpose; or (2) A decision to postpone the criminal conduct until another time."

[2] Edwards and Laster were Hyman's co-defendants, but they are not involved in this appeal.

the scene of a crime is insufficient to convict, "the jury was authorized to infer his criminal intent from his conduct before, during, and after the commission of the crime." *Thompson v. State*, 210 Ga. App. 655, 656 (436 SE2d 799) (1993). In the present case, although the robbery was not accomplished as planned, by Hyman's own statement, after he heard Laster's gun cock he started to go back to the detail shop, an act which the jury could infer was inconsistent with an intent to abandon the crime. Hyman went back to his car only upon seeing a car he thought was a police car, from which the jury could infer an increased probability of detection. See OCGA § 16-4-5 (b) (1). Moreover, Hyman's assistance in the participants' flight by driving was consistent with his participation in the criminal enterprise.

"A directed verdict of acquittal is proper only where there is no conflict in the evidence and the evidence introduced with all reasonable deductions and inferences therefrom shall demand a verdict of acquittal. OCGA § 17-9-1 (a). On appeal we must view the evidence in the light most favorable to the verdict, [Hyman] no longer enjoys the presumption of innocence, and we do not weigh the evidence nor judge the credibility of the witnesses. Further, we do not speculate which evidence the jury chose to believe or disbelieve." (Citations and punctuation omitted.) *Thompson*, supra.

Having viewed the evidence under the appropriate standards of appellate review, we conclude that a rational trier of fact could find Hyman guilty beyond a reasonable doubt of armed robbery and attempted armed robbery. See *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. In his second enumeration of error, Hyman contends the trial court erred in failing to grant his motion for directed verdict on the two aggravated assault and two interference with government property charges. Hyman asserts that because only one of the officers testified, the additional charge was supported only by hearsay.

James York, with the Tift County Sheriff's Department, testified that he was informed by a witness that a man in a white shirt was running down the street carrying a shotgun. Officer York testified that he drove to the area indicated by the witness and he saw a man in a white shirt getting into a car, which Officer York proceeded to follow. After Officer York attempted to stop the car he was following by activating his blue lights, the car sped up. During the chase which ensued, the person in the back seat of the car shot the shotgun in Officer York's direction. Officer York testified that he could see the flash from the gun before hearing the pellets hit his car. Sergeant Brown, driving the second pursuing police car, pulled his car in front of Officer York's car and the chase continued. Officer York saw two more flashes come from the vehicle being chased.

We have previously held that "intentionally firing a gun at another, absent justification, is sufficient in and of itself to support a conviction of aggravated assault." *Steele v. State*, 196 Ga. App. 330, 331 (396 SE2d 4) (1990). Therefore, construing the evidence in favor of the verdict, we find that Officer York's testimony was sufficient to support both aggravated assault charges.

"A person commits the offense of interference with government property when he . . . damages . . . government property." OCGA § 16-7-24 (a). In support of these charges, Officer York identified photographs of his vehicle and the vehicle driven by Sergeant Brown. Sergeant Brown's vehicle's blinker was broken by a shotgun blast. Officer York further testified that their vehicles were inspected daily. Although Hyman complains that Officer York had no way of knowing that Sergeant Brown's blinker was broken by the shotgun blast, the basis of Officer York's knowledge was never questioned. Therefore, because Officer York's knowledge could have been firsthand, rather than hearsay, we cannot assume that the testimony was hearsay. On appeal, we must construe the evidence to support the verdict, and by so construing the evidence we find it sufficient to support the crimes charged. See *Jackson v. Virginia*, supra.

3. In his third enumeration of error, Hyman contends the State failed to provide him with all his in-custody statements prior to trial and the admission thereof required a mistrial. Hyman maintains that the additional statements not provided to him were harmful to his defense because they tended to show that Hyman was aware that Laster was going to get his gun when Hyman took Laster to Laster's house. Hyman, however, was provided with a copy of his statement which indicated that he was aware Laster had obtained a sawed-off shotgun from his house prior to discussing making "a hit."

Pretermitting whether the State violated former OCGA § 17-7-210, we note that the punishment for failure to comply with the statutory requirements is the exclusion of such evidence from the State's "case-in-chief or in rebuttal." See former OCGA § 17-7-210 (c). In the present case, the testimony to which Hyman objects was rendered during defense counsel's cross-examination of the State's witness. The State did not pursue the objected-to line of questioning. Therefore, we do not find any error. See *Stuldivant v. State*, 202 Ga. App. 64 (1) (413 SE2d 247) (1991). See also *Henson v. State*, 168 Ga. App. 210, 211 (2) (308 SE2d 555) (1983).

4. In his final enumeration of error, Hyman contends that his conviction of two counts of aggravated assault must merge with the two counts of interference with government property.[3] We cannot

---

[3] OCGA § 16-1-7 (a) provides that "[w]hen the same conduct of an accused may estab-

agree because the evidence indicated that at least two shots were fired at each officer. Therefore, the State did not use identical evidence to prove each crime. Furthermore, the elements of interference with government property are not included in the elements required for aggravated assault. Compare OCGA §§ 16-5-21 and 16-7-24 (a). Hyman's enumeration of error is without merit.

*Judgment affirmed. Beasley, C. J., and Birdsong, P. J., concur.*

DECIDED JULY 22, 1996 —
RECONSIDERATION DENIED AUGUST 6, 1996.

*Jason K. Hoffman*, for appellant.
*C. Paul Bowden, District Attorney*, for appellee.

lish the commission of more than one crime, the accused may be prosecuted for each crime. He may not, however, be convicted of more than one crime if: (1) One crime is included in the other; or (2) The crimes differ only in that one is defined to prohibit a designated kind of conduct generally and the other to prohibit a specific instance of such conduct."