## A98A1443. MILLER v. THE STATE.
(506 SE2d 136)

JOHNSON, Presiding Judge.

Richard Miller appeals following his convictions of twelve counts of forgery, one count of theft by taking, one count of false statements, and two counts of possession of a firearm by a convicted felon. His co-defendant and wife, Shemoni Miller, filed a separate appeal from her convictions; her appeal was dismissed for her failure to file a brief and enumerations of error. We therefore consider only Richard Miller's appeal.

1. Richard Miller contends the trial court erred in ruling that he did not have standing to request that two prospective jurors be excused for cause. We hold that this enumeration was waived.

Wal-Mart was one of many companies to which Shemoni Miller was accused of writing a bad check. During voir dire, the trial court asked the panel if anyone was an employee or stockholder of Wal-

Mart. One juror responded that his wife worked at Wal-Mart and another stated he held stock in the company. Initially, Richard Miller's attorney requested that both panel members be struck for cause. The court noted that if both members were struck, there would not be enough jurors to try the case. The court then stated that the Wal-Mart employee's husband would be disqualified. Richard Miller's attorney replied that he would talk to his client, then asked the court if he could waive his objection to the employee's spouse serving as a juror. The court replied that he could, and Richard Miller's attorney requested and was given a chance to meet with his client. The court asked Shemoni Miller's attorney if she waived any disqualification. He responded that she did. Richard Miller's attorney added "We'll proceed. We'll waive it." The trial court then pointed out that the Wal-Mart charge involved only Shemoni Miller and her attorney waived any disqualification as to either potential juror. Therefore, the trial court remarked, Richard Miller would have no standing to object. Richard Miller's attorney replied "Yes, Your Honor," and the jury was empaneled.

"The disqualification of a juror may be expressly or impliedly waived by a party having cause to complain, and if expressly or impliedly waived, it is conclusively presumed that no harm or benefit to either party resulted from the disqualification, and where it appears that the party having cause to complain . . . knew of the relationship . . . and remained silent, that party will be presumed to have waived the disqualification. After verdict, an accused cannot obtain a new trial by reason of the fact that a juror is disqualified by relationship unless he can show that before the verdict he and his counsel did not know of the relationship, and could not have discovered it by the exercise of ordinary diligence." (Citations and punctuation omitted.) *Reid v. State*, 204 Ga. App. 358, 360-361 (2) (419 SE2d 321) (1992). Richard Miller accepted the jurors knowing of their relationships to Wal-Mart, and so expressly and presumptively waived his right to challenge any alleged disqualification of the jurors on appeal. See *McFarren v. State*, 210 Ga. App. 889, 892 (3) (437 SE2d 869) (1993); *Harris v. State*, 198 Ga. App. 503, 504 (2) (402 SE2d 62) (1991), reversed on other grounds, 261 Ga. 386 (405 SE2d 482) (1991). Furthermore, Richard Miller expressly acquiesced in the trial court's determination that he had no standing to object. "No matter how erroneous a ruling of a trial court might be, a litigant cannot submit to a ruling or acquiesce in the holding, and then complain of the same on appeal." (Citation and punctuation omitted.) *Boatright v. State*, 192 Ga. App. 112, 116 (5) (385 SE2d 298) (1988).

2. Richard Miller contends the trial court erred in not directing a verdict on Count 16 of the indictment when the only evidence of guilt

was his mere presence outside the building where the crime was committed. We disagree.

Count 16 of the indictment charged Richard Miller and his wife with theft by taking in connection with a July 1996 incident in which his wife cashed their daughter's social security check at Cartersville Beverage Company and then reported to the government that the check was missing. Because of this report, the check was not honored when presented by Cartersville Beverage. The evidence shows that Miller waited in the car while his wife cashed the check.

"The denial of a motion for directed verdict of acquittal should be affirmed if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Mere presence at the scene of a crime is insufficient to convict one of being a party to the crime, but presence, companionship, and conduct before and after the offense are circumstances from which one's participation in the criminal intent may be inferred. Criminal intent may be found by the jury upon consideration of the words, conduct, demeanor, motive, and all other circumstances connected with the act for which the accused is prosecuted." (Citations and punctuation omitted.) *Griffin v. State*, 228 Ga. App. 200, 203 (1) (491 SE2d 437) (1997).

Richard Miller's participation in the criminal intent may be inferred from circumstances other than his mere presence at the Cartersville Beverage Company on the day his wife cashed the check. For example, a cashier at Cartersville Beverage testified that Richard Miller cashed a check there in February 1996 which was later returned unpaid with the notations "account closed" and "insufficient funds." There was also evidence showing that without authorization he took eight checks from a school PTA of which he was president and made them payable to himself and his wife, then he and his wife cashed them. On one occasion he brought his wife into a check cashing business called "Mr. Payroll," introduced her to the cashier, and inquired as to whether she would be able to cash checks there; she thereafter began coming in to cash checks. Both Richard Miller and his wife wrote several bad checks there. Richard Miller had even cashed social security checks at that location. The cashier testified that Richard Miller was present inside the establishment on one occasion when his wife cashed a subsequently dishonored check, and that on another occasion he drove his wife there and waited in the car when she cashed a bad check. A cashier from another Mr. Payroll office testified that Richard Miller had cashed a social security check there before, and that it was returned unpaid as altered. She testified that he tried to cash three or four other checks there later, but the check cashing service would not accept his checks. The evidence supports a finding that Richard Miller was not merely present as an innocent bystander at the time his wife cashed the social security

check at issue. See generally *Hyman v. State*, 222 Ga. App. 419, 420-421 (1) (474 SE2d 243) (1996).

*Judgment affirmed. Smith, J., and Senior Appellate Judge Harold R. Banke concur.*

DECIDED AUGUST 10, 1998.

*Kelley A. Dial*, for appellant.

*T. Joseph Campbell, District Attorney, Mickey R. Thacker, Assistant District Attorney*, for appellee.