A03A1006. PATTERSON BANK v. GUNTER.
(588 SE2d 270)

ELLINGTON, Judge.

A Pierce County jury returned a verdict in favor of Carolyn Gunter in her slip and fall action against the Patterson Bank.[1] The bank appeals from the denial of its motion for a new trial, which was based on its post-trial discovery of a juror's disqualification and on the amount of the award for general damages. Finding no error, we affirm.

1. The bank contends it is entitled to a new trial because a juror was disqualified from serving due to his familial relationship to Gunter. See OCGA § 15-12-135 (a) (a juror is disqualified if the juror is related "by consanguinity or affinity" to any party "within the sixth degree as computed according to the civil law"). The week after the trial, the bank discovered that the juror was related to Gunter within the prohibited degree of kinship.

After verdict, a litigant cannot obtain a new trial by reason of the fact that a juror is disqualified by relationship, unless the litigant can show that before the verdict it and its counsel did not know of the relationship and could not have discovered the relationship by the exercise of ordinary diligence. *Reid v. State,* 204 Ga. App. 358, 361 (2) (419 SE2d 321) (1992); *Millers Nat. Ins. Co. v. Waters,* 97 Ga. App. 103, 109 (2) (102 SE2d 193) (1958). "[W]here the party or [its] counsel has reason to believe that a disqualification exists, the burden is on them to make further investigation to determine the truth of the situation, and in the absence of further investigation such disqualification is waived and a judgment overruling such ground of the motion

---

[1] This is the second appearance of this case in this Court. See *Gunter v. Patterson Bank,* 247 Ga. App. 555 (544 SE2d 735) (2001) (reversing grant of summary judgment in favor of bank).

for new trial is not reversible error." (Citation omitted.) *Norman v. Norman*, 103 Ga. App. 626, 629 (2) (120 SE2d 42) (1961). When a motion for new trial is supported by evidence of a juror's disqualification, we review the trial court's decision under the abuse of discretion standard. *Millers Nat. Ins. Co. v. Waters*, 97 Ga. App. at 109 (2).

In this case, the bank deposed Gunter four years before the trial. The bank asked Gunter if she had relatives among the broad class of persons who could be summoned as jurors in the trial of the case, that is, adult residents of Pierce County.[2] Gunter answered: "I don't but my husband has some cousins." Gunter did not know their names and said, "You will have to ask [my husband]. There are several cousins." Gunter contends her deposition answer put the bank on notice that further investigation would be required to discover the names of those relatives so that prospective jurors could be questioned about any relationship to Gunter's husband. We agree. *Millers Nat. Ins. Co. v. Waters*, 97 Ga. App. at 109-110 (2) (trial court was authorized to find lack of due diligence where party failed to obtain list of interested corporation's stockholders so that disqualified relatives of stockholders could be discovered on jury panel). The trial court did not abuse its discretion in denying the bank's motion. Id.; *Norman v. Norman*, 103 Ga. App. at 629 (2).

2. The bank contends it is entitled to a new trial because the jury's award was so excessive as to warrant a new trial. See OCGA § 51-12-12 (a).[3]

> The amount of damages returned by a jury in a verdict for pain and suffering due to alleged negligence is governed by no other standard than the enlightened conscience of impartial jurors. And the defendant has a heavy burden under OCGA § 51-12-12 (a) to establish that such a damage award is excessive[.] In particular, appellate courts should be hesitant to second-guess verdicts where the damage award is based in any significant part on pain and suffering. . . . Therefore, for this Court to overturn the jury's verdict, it must be so flagrantly excessive or inadequate, in light of the evidence, as to create a clear implication of bias, prejudice, or gross mistake by the jurors. Moreover, because the trial court approved the verdict in denying [the appellant's] post-

---

[2] See OCGA §§ 15-12-40 et seq.; 15-12-120 et seq.; 15-12-163 (b).

[3] OCGA § 51-12-12 (a) provides: "The question of damages is ordinarily one for the jury; and the court should not interfere with the jury's verdict unless the damages awarded by the jury are clearly so inadequate or so excessive as to be inconsistent with the preponderance of the evidence in the case."

trial motion, a presumption of correctness arises that will not be disturbed absent compelling evidence.

(Citations and punctuation omitted.) *Beam v. Kingsley*, 255 Ga. App. 715, 716 (1) (566 SE2d 437) (2002).

In this case, the bank argues that the jury's award of $621,129.68 is inconsistent with the preponderance of the evidence and shocks the moral senses based on such facts as (1) the total award is nearly thirty times Gunter's total special damages (in this case, her medical expenses) of $21,129.68; (2) Gunter missed only five weeks from work before returning part-time and returned full-time after ten weeks; (3) Gunter sustained only a five percent total body disability and a twelve percent disability to one leg; and (4) Gunter did not require medical care for her knee in the years after the injury and manages the residual pain with over-the-counter medications. But, as Gunter argues, "this Court has consistently rejected attempts by appellants to reverse awards based on any mathematical formulae." Indeed, the bank does not identify *any* case where, based on the factors argued here, our appellate courts have reversed a jury's award which was approved by the trial court in a post-trial ruling.

The jury heard the victim's testimony about the pain she suffered immediately after she fell and during her recuperation as well as the pain she continues to suffer and the limitations on her life activities. Given the evidence, the amount of the jury's award here is not so flagrant as to shock the conscience, and we cannot find that the trial court abused its discretion in denying the bank's motion. *J. B. Hunt Transport v. Brown*, 236 Ga. App. 634, 637 (3) (512 SE2d 34) (1999); *Whitley v. Ditta*, 209 Ga. App. 553, 554-555 (2) (434 SE2d 108) (1993); *Atlanta Transit System v. Robinson*, 134 Ga. App. 170-171 (1) (213 SE2d 547) (1975).

*Judgment affirmed. Ruffin, P. J., Miller and Phipps, JJ., concur. Smith, C. J., Andrews, P. J., and Blackburn, P. J., dissent.*

BLACKBURN, Presiding Judge, dissenting.

In the first Division of this case, the majority holds that Patterson Bank was not entitled to a new trial even though one of the jurors was disqualified because of his familial relationship to the plaintiff, and bases that holding on its conclusion that the bank did not exercise ordinary diligence in discovering the relationship. Because controlling precedent indicates that Patterson Bank exercised due diligence in seeking to discover any disqualifying factors of the prospective jurors, I must respectfully dissent.

A party has a duty to exercise ordinary diligence to discover any disqualifying factor of a juror. Under the facts of this case and guided

by precedent, we cannot say that there was a lack of ordinary diligence on the part of the bank. On the question of diligence, this Court has quoted with approval the following:

> When parties are furnished with a list of the jury, it is their duty, if they know that any of the jurors are disqualified, to call attention to the same, or the disqualification will be held to have been waived. If they have reasonable grounds to suspect that any of the jurors are disqualified, it is their duty to call attention to the fact, so that due inquiry may be made of the panel. *Further than this they are not required to go. Due diligence requires no more than this.*

(Punctuation omitted; emphasis supplied.) *Jennings v. Autry.*[4]

The transcript shows that the trial court, in conducting voir dire, asked the prospective jurors whether any of them were related by blood or marriage to Carolyn Gunter. One juror, Edith Gunter, told the court that she did not know if her husband was related to Gunter. Plaintiff's counsel informed the court that Edith Gunter's husband might be related as a fourth or fifth cousin. The court made other inquiries, including whether any of the jurors were related to employees of the bank. One juror, Thornton, responded that he was a first or second cousin to a bank employee; another, Smith, stated that her husband's nephew worked at the bank. The trial court disqualified Edith Gunter, Thornton, and Smith for being within the prohibited degree.

Dwayne Aldridge, the juror later discovered to be related to Gunter, did not respond when the trial court asked if any of the jurors were related by blood or marriage to the plaintiff. "It is obvious that the juror, who was asked the question along with the rest of the panel, was under a duty to speak and that the failure to answer was tantamount to an oral response that he [was not related by blood or marriage to] the plaintiff." *Glover v. Maddox.*[5]

It is undisputed that Aldridge is within the prohibited degree of kinship with Gunter. "Bias is conclusively presumed or inferred as a matter of law regardless of actual partiality, where a juror is related to a party. In that circumstance, 'disqualification on the basis of implied bias is mandatory.'" (Citation omitted.) *Kirkland v. State.*[6] Beyond that, the fact that Aldridge served as foreman of the jury exacerbates any bias he may have had. *Pierce v. Altman*[7] ("[I]f there

---

[4] *Jennings v. Autry*, 94 Ga. App. 344, 345 (7) (94 SE2d 629) (1956).
[5] *Glover v. Maddox*, 100 Ga. App. 262, 265 (5) (111 SE2d 164) (1959).
[6] *Kirkland v. State*, 274 Ga. 778, 780 (2) (560 SE2d 6) (2002).
[7] *Pierce v. Altman*, 147 Ga. App. 22, 24 (248 SE2d 34) (1978).

was any bias here, even a subtle or vague one, its effect could be compounded by the fact that this particular juror has been elected jury foreman, which may well indicate that he has a charisma or prestige which would accentuate the impact of his opinions and augment his persuasiveness.").

Aldridge claims that he did not know of his kinship to the plaintiff. That fact, if true, is irrelevant. "It is contrary to public policy to allow a juror, after participating in the making of a verdict, to assert ignorance of any fact which rendered him incompetent to serve. The fact that the juror was ignorant of his disqualification at the time of the trial, and so swears, makes no difference." (Citation and punctuation omitted.) *Ferguson v. Bank of Dawson.*[8]

Case law also makes clear that Patterson Bank did not waive the juror's disqualification. No question of lack of diligence or waiver is presented where a party asks a question regarding the qualification of a prospective juror and receives an erroneous answer which prohibits him from making an intelligent selection. *Glover v. Maddox,* supra at 266. Waiver occurs only "where either the complaining party or counsel for such party has reason to believe a disqualification exists." *Norman v. Norman.*[9] In cases where waiver has been found, the complaining party actually had some reason to believe, at the beginning of the trial, that a particular person might be disqualified. See, e.g., *Jennings v. Autry,* supra; *Miller v. State;*[10] *Norman v. Norman,* supra. The waiver occurred after the party, though having reason to believe that a particular person might have a prohibited relationship, nevertheless decided to proceed without further inquiry into the relationship. Waiver is found where there has been an intentional relinquishment or abandonment of a known right or privilege. *Kirkland,* supra at 780, n. 2.

In this case, there was no waiver. After the trial court asked the jurors about their relationship with Gunter, the bank had no reasonable grounds to suspect that Aldridge was disqualified and thus did not intentionally relinquish its right to object to the disqualified juror. I do not agree with the majority that the bank waived its rights because, in a deposition four years before trial, Gunter told the bank that her husband had some cousins in Pierce County. This information did not put the bank on notice, or give it reasonable grounds to suspect, that any particular person in the jury pool should be questioned about a familial relationship with the plaintiff. All the bank learned, four years before, was that some of the adult residents of Pierce County who might be summoned as jurors might also be

---

[8] *Ferguson v. Bank of Dawson,* 53 Ga. App. 309, 311-312 (185 SE 602) (1936).
[9] *Norman v. Norman,* 103 Ga. App. 626, 629 (2) (120 SE2d 42) (1961).
[10] *Miller v. State,* 233 Ga. App. 814 (506 SE2d 136) (1998).

related by marriage to the plaintiff. This meant, effectively, that no particular, but every prospective juror would have to be questioned about his relationship to Gunter. That is, of course, what the trial judge in fact did. Once the trial court propounded the questions and the jurors responded, the bank was not required to ask a second time what the judge had already asked, and it had a right to rely on those responses. Due diligence having been exercised and information elicited to which the bank was entitled in its selection of a jury, the bank was deprived of a substantial right when the information was withheld. *Norman v. Norman*, supra at 629. Again, as both *Glover v. Maddox* and *Norman v. Norman* make clear, there is simply no question of lack of diligence or waiver presented when questions regarding juror qualification are asked and erroneous answers are given which prohibit a party from making an intelligent juror selection. Further action is required only when a party has reason to believe a disqualification exists.

> [T]he defendant had the right to the information and the right to make a choice with it. No question of waiver is here presented, for [the court] asked the question and received an erroneous answer which prohibited [the defendant] from making an intelligent selection. No question of lack of diligence or waiver is here presented, as it was in the case of *Jennings v. Autry*, [supra], where the defendant was apprised of a possible relative of the plaintiff being on the jury before trial and no investigation or individual examination of the juror was instituted until after the verdict. Accordingly, the trial court erred in denying the defendant's motion for new trial and such judgment must be reversed.

*Glover v. Maddox*, supra at 266.

The majority cites *Millers Nat. Ins. Co. v. Waters*[11] as support for their position that the bank did not exercise due diligence. *Millers Nat. Ins. Co.* is not applicable here because the investigation it requires was conducted by the trial court during jury selection, and juror Aldridge failed to properly respond, thus misleading the court and the parties. Later cases of this court have held that no issue of lack of diligence or waiver is raised when questions regarding possible disqualification have in fact been asked of prospective jurors and erroneous answers have been given which prevent a party from making an informed selection of jurors.

"An attack on the jury selection process is never to be treated

---

[11] *Millers Nat. Ins. Co. v. Waters*, 97 Ga. App. 103 (102 SE2d 193) (1958).

lightly, for the selection of an impartial jury is . . . 'the cornerstone of the fairness of trial by jury.'" *Firestone Tire &c. Co. v. King.*[12]

> The public policy of this State is to keep jury trials free from suspicion of irregularity or impropriety of conduct. A method for assuring such, and an expression of the policy as a right, is provided in OCGA § 15-12-133. To implement the voir dire and its purpose, counsel are entitled to have truthful answers given to questions propounded to jurors. For this reason, defendant's entitlements to the information and to make a choice with regard to it are scrupulously enforced.

(Citation omitted.) *Fidelity Nat. Bank v. Kneller.*[13] Contrary to the argument of the majority, advancing this policy by reversing the trial court's ruling in this case will not create an incentive for parties to manipulate the jury system by waiting until after an adverse verdict to investigate potential classes of disqualified jurors. In this case, the trial court itself did in fact investigate a potential class of disqualified jurors when it asked the prospective jurors if they were related to Gunter. That fact is crucial in this case; due inquiry was made as to familial relationships, the potential jurors responded to the inquiry of the court, and ordinary due diligence did not require Gunter to make further inquiry. To hold otherwise would require the parties to investigate every material representation, whether active or passive, by every potential juror. It effectively declares that one cannot rely on the responses of potential jurors. Investigation is required where one has a reasonable basis for suspicion, but not where a potential juror has falsely responded to an inquiry on the issue during voir dire. A party is entitled to rely on the representations of potential jurors.

We are bound by precedent, not our aspirations. Precedent compels us to hold that the verdict in this case was not rendered by a qualified jury, that the verdict therefore was illegal and void, and that the trial court erred in overruling the bank's motion. To rule otherwise would require us to overrule the standard of due diligence of *Jennings v. Autry*, supra, and 49 years of precedent. I do not believe that the facts of this case compel such a result.

I am authorized to state that Chief Judge Smith and Presiding Judge Andrews join in this dissent.

---

[12] *Firestone Tire &c. Co. v. King*, 145 Ga. App. 840, 844 (4) (244 SE2d 905) (1978).
[13] *Fidelity Nat. Bank v. Kneller*, 194 Ga. App. 55, 59 (1) (390 SE2d 55) (1989).

Decided September 26, 2003 —

*Taylor, Odachowski & Sperry, Philip R. Taylor, Donna L. Cross-land*, for appellant.
*Fred R. Kopp, John R. Thigpen, Sr.*, for appellee.