## A06A1589. ADAMS v. THE STATE.
### (634 SE2d 868)

ELLINGTON, Judge.

A Jackson County jury found Harry Thomas Adams guilty of committing aggravated assaults against two deputies by use of his speeding car, OCGA § 16-5-21 (a) (2), (c), and other offenses not relevant to this appeal. Adams appeals from the denial of his motion for new trial, raising the general grounds. Finding no error, we affirm.

When a criminal defendant challenges the sufficiency of the evidence supporting his or her conviction, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Citation omitted; emphasis in original.) *Jackson v. Virginia*, 443 U. S. 307, 318-319 (III) (B) (99 SC 2781, 61 LE2d 560) (1979). The jury, not this Court, resolves conflicts in the testimony, weighs the evidence, and draws reasonable inferences from basic facts to ultimate facts. Id. "As long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case, the jury's verdict will be upheld." (Citation and punctuation omitted.) *Miller v. State*, 273 Ga. 831, 832 (546 SE2d 524) (2001). Viewed in this light, the record reveals the following facts.

Around 11:00 a.m. on July 27, 2004, a uniformed deputy in a marked patrol car saw Adams drive his Ford Thunderbird through an intersection without first stopping at the stop sign. Adams almost caused an accident. Adams' wife, who was in the passenger's seat, testified that Adams was trying to avoid the deputy because their car was uninsured. The State also adduced evidence of other motives. A deputy observed someone in the car throw a bag containing a white powdery substance from the window. The bag was never found. Also,

when Adams was finally arrested, the police found open beer cans on the front floorboards of his car, smelled the odor of an alcoholic beverage on his person, and noticed that Adams appeared intoxicated. He refused a blood alcohol test. Regardless of what Adams' reasons may have been for wishing to avoid a police encounter, the evidence amply demonstrates an intent to escape. For example, as he sped away, he told his wife to "buckle up." When the deputy turned on his blue lights and attempted to pull Adams over, he failed to comply. And for the next 12 minutes, Adams led several deputies on a dangerous, high-speed chase through rural, residential, and commercial areas in and around Highway 441 in Jackson County.

Adams plowed through busy intersections, forcing motorists from the road. He straddled the centerline, traveled in turn-only lanes, and drove in the wrong lane toward oncoming traffic, sending several drivers careening onto the shoulder. His speed, always in excess of the posted limit, at one point reached about 125 miles per hour. He lost control of his car a couple of times, each time coming very close to hitting other cars and pedestrians, including a woman who was walking her dog and a deputy trying to deploy "stop sticks." Adams also drove directly at cars and trucks, including a tractor-trailer and a gasoline tanker. He sped toward them without braking, "playing chicken," forcing them out of their lanes of travel.

At one point during the chase, Adams drove into oncoming traffic, directly at two deputies who were in their lane of travel, at about 90 miles per hour, and forced both off the road. One deputy testified that Adams' lane of travel was unobstructed and that he had no reason to be in the deputy's lane of travel other than to hit him. The deputies both testified that had they not reacted as quickly as they did, a serious, probably fatal, head-on collision would have resulted. A deputy who observed the incident from behind Adams testified that it looked like Adams was "trying to cause an accident with them using his vehicle as a weapon." After forcing the deputies off the road, "[Adams] still stayed straddling the double yellow line, never once getting back into . . . his own lane past that point." There is no evidence that Adams had lost control of his car at this point.

Adams contends the State failed to produce sufficient evidence of aggravated assault because it failed to prove that he intentionally threatened the two deputies he forced off the road with his car. We disagree. As we have held:

> A person is guilty of aggravated assault on a police officer "when he or she assaults (a peace officer) with a deadly weapon or with any object, device, or instrument which, when used offensively against a person, is likely to or actually does result in serious bodily injury. . . ." OCGA

§ 16-5-21 (a) (2) and (c). An assault occurs when a person "attempts to commit a violent injury to the person of another; or commits an act which places another in reasonable apprehension of immediately receiving a violent injury." OCGA § 16-5-20 (a) (1), (2). It is well established that a speeding driver who uses a car offensively against a police officer during a high-speed chase can be guilty of aggravated assault on a police officer.

(Citations omitted.) *Dyer v. State*, 261 Ga. App. 289, 290 (1) (585 SE2d 81) (2003). The question of whether an automobile has been intentionally used in such a manner so as to constitute a deadly or offensive weapon is one for the jury to resolve. *Durrance v. State*, 250 Ga. App. 185, 186-187 (2) (549 SE2d 406) (2001). Intent, of course, may be inferred from the circumstances. See *Black v. State*, 222 Ga. App. 80, 81 (1) (473 SE2d 186) (1996) (intent inferred where defendant hit patrol cars while making a U-turn and appeared to be in full control of his vehicle just prior to impact).

In this case, prior to driving directly at the deputies, Adams had used his car offensively toward others by "playing chicken," forcing cars and trucks off the road as he sped away from the authorities. Further, when Adams sped toward the deputies at 90 miles per hour, he had no reason to be in their lane of travel and appeared to be in control of his car at that time. Given this evidence, the jury could infer Adams intended to threaten the deputies with a catastrophic collision with his car to force them from the road. Because the evidence adduced is sufficient to support the jury's finding of guilt on both counts of aggravated assault beyond a reasonable doubt, we affirm.

*Judgment affirmed. Johnson, P. J., and Miller, J., concur.*

DECIDED JULY 27, 2006.

*Mary Erickson*, for appellant.

*Timothy G. Madison, District Attorney, Robin R. Riggs, Assistant District Attorney*, for appellee.