**THIRD DIVISION**
**DOYLE, P. J.,**
**REESE, P. J., and BROWN, J.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

April 14, 2021

# In the Court of Appeals of Georgia

A21A0291. COLLINS v. THE STATE.

BROWN, Judge.

Following a jury trial, Joseph Wayne Collins was convicted of theft by taking, aggravated assault on a peace officer, interference with government property, reckless driving, fleeing or attempting to elude a police officer, and various other offenses stemming from a high-speed chase with police. Collins appeals from his convictions and the denial of his amended motion for new trial, contending that the trial court failed to give the jury an instruction limiting the purpose for which his prior conviction could be used and erred in failing to analyze whether the probative value of the prior conviction outweighed its prejudicial effect. He also contends that the evidence was insufficient to support his conviction for aggravated assault on a peace

officer and that the trial court should have merged his convictions for interference with government property and aggravated assault on a peace officer. We affirm.

Viewed in the light most favorable to the verdict, the evidence shows that police responded to Collins' mother's house after she reported an intoxicated subject, later identified by police as Collins. When a deputy arrived at the home, Collins — who was known to police because of a recent encounter — had already left. Concerned that Collins was driving intoxicated and with a suspended license and no registration or insurance on his vehicle, the deputy proceeded to Collins' house where he observed Collins standing in the driveway at the rear of his vehicle. When Collins got into his vehicle and drove away, the deputy followed, activated his blue lights and attempted to conduct a traffic stop because the tag on Collins' vehicle was registered to a different vehicle. Collins "started to stop" his vehicle on the side of the road but then accelerated back onto the road and continued driving. The deputy activated his siren and again tried to stop Collins, but Collins accelerated at a "pretty high rate of speed" and a high-speed pursuit ensued with speeds reaching at least 84 miles per hour. The deputy pursued Collins for several miles but lost him in the dust of a dirt road.

A BOLO was issued, and about 30 minutes later, a second deputy saw Collins' vehicle and attempted a traffic stop, but Collins again refused to pull over and fled. After being notified over the radio that the second deputy was in pursuit of Collins, the first deputy deployed spike strips, but Collins continued to flee after running over the spikes. According to the second deputy, Collins was now towing an open trailer which was spewing trash and debris, including a bucket that hit the windshield of his patrol car. The deputy testified that there was trash everywhere and that Collins seemed to be purposely "fishtailing his vehicle in an attempt to sling more trash and stuff" in order to slow down the officer. After Collins came close to hitting a police vehicle, the deputy tried to slow him down by using a rolling roadblock or "box-in maneuver." The deputy positioned his patrol car in front of Collins' vehicle while two other deputies positioned their patrol cars behind and to the side of Collins' vehicle. Collins again refused to slow down. In fact, the deputy testified that Collins never slowed down and that just as the deputy slowed his car, he would see Collins "coming in [his] rearview mirror and [he] would have to speed up just to keep [Collins] from running into [him]." Collins eventually "ramm[ed]" the rear of the deputy's patrol car, causing the patrol car "to become loose" and veer to the right side of the road. The deputy testified that Collins' act of ramming his vehicle caused him "apprehension

3

and concern for [his] safety." At this point, Collins left the roadway and attempted to pass the patrol car, but his vehicle "got hung [up] in the front push guard of [the] patrol vehicle." The vehicles then became locked together and drove off the road, at which point Collins jumped out and took off through the woods. The deputy pursued Collins and used a taser to apprehend him. After Collins was apprehended, police discovered his girlfriend and infant son in the vehicle.

At trial, Collins testified in his own defense. He admitted driving the vehicle involved in the high-speed chase, and driving with a suspended license and without insurance. He also acknowledged that the tag on his car belonged to another vehicle; that he eluded police; and that he was driving recklessly. According to Collins, he did not stop for police because he was afraid he would lose his son and because his "paranoid schizophrenia . . . kicked in [and he] lost all [his] thought, train of, you know, what was going on from there." Collins also testified that he did not realize he had run over the spike strips and that he had lost all control over the vehicle and trailer he was towing. As for his collision with the second deputy's patrol car, Collins claimed that his brakes failed, his face hit the steering wheel, and that he was "pretty sure that [he] was . . . unconscious after the first impact." Collins denied that he was trying to hit the deputy's patrol car or hurt anyone; rather, his paranoia kicked in and

he was just trying to get away and protect his son and that the impact was an accident. According to Collins, he "came to" just in time to run from the vehicle. On cross-examination, Collins acknowledged that if he had just stopped when the first deputy attempted to pull him over, he would not "be here today." At the close of the State's cross-examination of Collins, Collins admitted that in 2009, he pleaded guilty to one count of terroristic threats for threatening to murder an individual.

1. Collins contends that the trial court erred in failing to give the jury an instruction limiting the purpose for which his prior conviction could be used. The record reflects that after the State indicated its intent to "get into [Collins'] conviction," defense counsel asked the trial court to give the "pattern limiting instruction about prior convictions that are being used for impeachment purposes and not being used for any other — the jury not using it for any other purpose[.]" The trial court responded that it was not required to give a limiting instruction at the time the conviction was admitted, but that an instruction would be given. Defense counsel clarified that he was not asking for a contemporaneous limiting instruction; rather he wanted "to make sure that language is included when we do the final charge." The trial court responded, "Sure, I'll do something like that, sure." During the charge conference, defense counsel again asked the trial court to give a limiting instruction,

specifically Suggested Pattern Jury Instruction 1.34.00, and the trial court ruled that it was omitting the instruction over objection. During the jury charge, the trial court gave the following charge:

> In determining the credibility of witnesses and any testimony by them in court, you may consider, where applicable, evidence offered to attack the credibility or believability of any such witness, this would be evidence of a felony conviction. To prove that the defendant has been convicted of the offense of terroristic threats could be such a felony. To impeach a witness is to show that the witness is unworthy of belief. A witness may be impeached by disproving the facts to which the witness testified.

Defense counsel renewed his objection at the close of the charges.

The "limiting instruction" requested by defense counsel states, in pertinent part: "Sometimes evidence is admitted for a limited purpose. Such evidence may be considered by the jury for the sole issue or purpose for which the evidence is limited and not for any other purpose." (Parentheticals omitted.) Suggested Pattern Jury Instructions, Vol. II: Criminal Cases, § 1.34.00 (4th ed. 2020). While the trial court properly instructed the jury on impeachment in general, its instruction did not limit consideration of the prior conviction for impeachment purposes *only*, as requested. Nevertheless, we conclude that any error in failing to give the requested charge "was

6

harmless because the overwhelming evidence of [Collins'] guilt makes it highly improbable the jury's verdict would have been affected by the error." *Holsey v. State*, 281 Ga. 177, 180 (3) (637 SE2d 32) (2006). See also *Cannon v. State*, 302 Ga. 327, 330-331 (3) (806 SE2d 584) (2017) (failure to give requested charge on impeachment by prior conviction of eyewitness harmless error where not highly probable that error contributed to the verdict and trial court properly instructed jury on impeachment in general); *Gray v. State*, 357 Ga. App. 47, 52 (2) (849 SE2d 772) (2020) (same).

2. Collins contends that the trial court erred in failing to analyze whether the probative value of his prior conviction outweighed its prejudicial effect pursuant to OCGA § 24-6-609 (a) (1).[1] We disagree.

Collins has waived any challenge on this basis because he did not object below to the admission of his prior conviction on this specific ground or *any other* ground at all; indeed, it appears from the record that Collins conceded to its admission. Additionally, "on appeal, he makes no effort to argue that the trial court's failure to

---

[1] That Code section provides, in pertinent part, that: "For the purpose of attacking the character for truthfulness of a witness: (1) . . . [E]vidence that an accused has been convicted of [a crime punishable by death or imprisonment in excess of one year] shall be admitted if the court determines that the probative value of admitting the evidence outweighs its prejudicial effect to the accused[.]" OCGA § 24-6-609 (a) (1).

7

exclude [his prior conviction under OCGA § 24-6-609] constituted 'plain error.'" See

*Castillo-Velasquez v. State*, 305 Ga. 644, 652 (4) (827 SE2d 257) (2019) (considering

OCGA § 24-4-403 claim raised for first time on appeal for plain error only); *Davis*

*v. State*, 302 Ga. 576, 581 (2) (805 SE2d 859) (2017) (appellate review of claim that

trial court should have excluded testimony under OCGA § 24-4-403 limited to plain

error where defendant failed to object to testimony on this ground at trial level).

Compare *Martinez-Arias v. State*, 356 Ga. App. 423, 425 (1) (a), n.1 (846 SE2d 448)

(2020) (declining to consider claim that trial court erred in failing to exclude witness'

testimony under OCGA § 24-4-403 because its probative value was substantially

outweighed by the danger of unfair prejudice because defendant did not object to

testimony on this ground below). Regardless, the trial court satisfied any obligation

to perform the balancing test set out in OCGA § 24-6-609 (a) by finding in its order

denying Collins' motion for new trial that the probative value of admitting the prior

conviction outweighed any prejudicial effect. See *Carter v. State*, 303 Ga. App. 142,

146 (2) (692 SE2d 753) (2010) (under former version of OCGA § 24-6-609, "as long

as the trial court makes express findings on this issue, even if made in an order on

motion for new trial, as was done here, the intent of [the statute] is satisfied"). Cf.

*Butler v. State*, 309 Ga. 755, 763-764 (2) (d) (848 SE2d 97) (2020) (vacating

8

convictions and remanding for trial court to conduct correct balancing test required by OCGA § 24-6-609, and instructing trial court to re-enter the judgments of conviction and sentence if prior conviction was properly admitted).

3. Collins claims the evidence at trial was insufficient to support his conviction for aggravated assault on a peace officer because the evidence did not show an intent to harm the second deputy or that the deputy had a reasonable apprehension of immediately receiving a violent injury. Collins claims that he had no general intent to injure because he was simply trying to flee when officers blocked him in with their vehicles, and that he had no control over his vehicle. We disagree.

> On appeal from a criminal conviction, we view the evidence in the light most favorable to the verdict, and the defendant no longer enjoys the presumption of innocence. We do not weigh the evidence or determine witness credibility, but only determine if the evidence was sufficient for a rational trier of fact to find the defendant guilty of the charged offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

(Citation and punctuation omitted.) *Dyer v. State*, 261 Ga. App. 289, 290 (1) (585 SE2d 81) (2003). A person is guilty of aggravated assault on a police officer "when he or she assaults [a public safety officer] [w]ith a deadly weapon or with any object, device, or instrument which, when used offensively against a person, is likely to or

9

actually does result in serious bodily injury. . . ." OCGA § 16-5-21 (a) (2), (c) (1). An assault occurs when a person "[a]ttempts to commit a violent injury to the person of another; or [c]ommits an act which places another in reasonable apprehension of immediately receiving a violent injury." OCGA § 16-5-20 (a) (1), (2). "It is well established that a speeding driver who uses a car offensively against a police officer during a high-speed chase can be guilty of aggravated assault on a police officer." *Dyer*, 261 Ga. App. at 290 (1). "The question of whether an automobile has been intentionally used in such a manner so as to constitute a deadly or offensive weapon and whether the defendant intended to harm the officer is one for the jury to resolve." *Adams v. State*, 280 Ga. App. 779, 781 (634 SE2d 868) (2006). See also *Dupree v. State*, 267 Ga. App. 561, 563 (1) (600 SE2d 654) (2004).

In this case there was ample evidence from which a jury could find that Collins intended to ram his vehicle into the deputy's patrol car in an effort to evade police. Prior to the collision, Collins led officers on two separate high-speed chases; ignored strip spikes and officers' efforts to stop him by using a rolling roadblock; almost hit a government vehicle; purposely fishtailed his vehicle; failed to slow his vehicle even as it bore down on the deputy's vehicle, avoiding contact only because the deputy sped up his vehicle; and then attempted to go around the second deputy's vehicle

10

even after the collision. Given Collins' actions prior to, during, and after the collision, the jury was free to reject his testimony that he did not intend to hit the deputy's vehicle. See *Dyer*, 261 Ga. App. at 290 (1). Additionally, the deputy testified that he feared for his safety when Collins rammed his vehicle. We conclude that the evidence was sufficient to support the jury's finding of guilt on this count. See id. See also *Adams*, 280 Ga. App. at 781.

4. Collins last argues that the trial court should have merged his convictions for interference with government property and aggravated assault on a peace officer. We conclude that the trial court properly did not merge these counts.

Count 1 of the indictment charged Collins with the offense of aggravated assault on a peace officer for making an assault "upon the [second deputy] with [his vehicle], an object which when used offensively against a person is likely to result in serious bodily injury, by striking the patrol car while said Officer was driving the patrol car[.]" Count 2 charged Collins with interference for "unlawfully damag[ing] a patrol car, property of the White County Sheriff's Office, by striking said patrol car with [his] vehicle[.]"

Pursuant to OCGA § 16-1-7 (a),

11

[w]hen the same conduct of an accused may establish the commission of more than one crime, the accused may be prosecuted for each crime. He may not, however, be convicted of more than one crime if: (1) One crime is included in the other; or (2) The crimes differ only in that one is defined to prohibit a designated kind of conduct generally and the other to prohibit a specific instance of such conduct.

A crime is included in the other, under OCGA § 16-1-6 (1), where "[i]t is established by proof of the same or less than all the facts or a less culpable mental state than is required to establish the commission of the crime charged." OCGA § 16-1-6 (1).[2] When making this determination, we apply the "required evidence" test adopted in *Drinkard v. Walker*, 281 Ga. 211 (636 SE2d 530) (2006): "Where the same act or transaction constitutes a violation of two distinct statutory provisions, the required evidence test considers whether each provision requires proof of a fact which the other does not. If so, then there are two offenses, and neither is 'included in' the other." (Citation and punctuation omitted.) *Gaston v. State*, 317 Ga. App. 645, 650 (3) (731 SE2d 79) (2012).

---

[2] A crime is also included in the other where "[i]t differs from the crime charged only in the respect that a less serious injury or risk of injury to the same person, property, or public interest or a lesser kind of culpability suffices to establish its commission." OCGA § 16-1-6 (2).

12

> In applying the required evidence test[,] the important question is not the number of acts involved, or whether the crimes have overlapping elements, but whether, looking at the evidence required to prove each crime, one of the crimes was established by proof of the same or less than all the facts required to establish the commission of the other crime charged.

(Citation and punctuation omitted.) *Metcalf v. State*, 349 Ga. App. 408, 419 (2) (d) (825 SE2d 909) (2019).

Turning to the offenses at hand, the statute governing aggravated assault on a public safety officer is set out above in Division 3. As for the offense of interference with government property, "[a] person commits [that] offense . . . when he . . . damages . . . government property[.]" OCGA § 16-7-24 (a). It follows that the offense of aggravated assault on a public safety officer required proof of a fact that the offense of interference with government property did not: an assault that is likely to or actually does result in serious bodily injury. And the offense of interference with government property required proof of a fact that the offense of aggravated assault on a public safety officer did not: damage to government property.[3] Cf. *Epperson v.*

---

[3] Nor do these counts merge under the other statutory provisions regarding merger. See *Metcalf*, 349 Ga. App. at 414-424 (2) (e), (f), (g).

*State*, 340 Ga. App. 25, 35 (3) (a) (796 SE2d 1) (2016) ("[a]ggravated battery and armed robbery do not simply prohibit different degrees of injury or risk of injury; rather, the two crimes prohibit entirely different categories of injury — depriving a victim of a member of his body versus depriving a victim of property") (emphasis omitted); *Hyman v. State*, 222 Ga. App. 419, 422 (4) (474 SE2d 243) (1996) (under pre-*Drinkard* analysis, two counts of aggravated assault of a peace officer and two counts of interference with government property did not merge).

*Judgment affirmed. Doyle, P. J., and Reese, P. J., concur.*